Miss Roan, good morning to you. Surely. I wish to save three minutes for rebuttal. Aye. If it please the court, it is the contention of the appellant that the district court erred in finding that there was no diversity in this case. We note several things preliminarily. May I ask, let me just make sure that you were in agreement on the standard of review here. Are we reviewing Judge Bardo's determinations under a clearly erroneous standard? As to the findings of facts, yes. Yes. As to the application of law, it's preliminary. But as to the findings of facts, it's clearly erroneous. Okay. What is the law here? What do you mean, what is the law? In other words, in order to establish domicile for purposes of 1332 diversity jurisdiction, what do we have, what are the tests? You'll have to look at the circumstances as they existed at the time of the filing and the intention of the plaintiff, in this case, at the time of the filing. And those circumstances we contend support the fact that she was indeed a resident of Texas. Preliminarily, I point out that this case was filed on July 24th, 2006, the time that it was filed. She had been here since December 2000, late December 2005. She had been placed on a temporary job assignment with a Texas company who had transferred her here as a temporary employee and was paying her $100 per day per diem because she was working outside of her residence. Is that part of the record, that the per diem was because she was working outside of her residence? It was a nonresident per diem, and yes, I mean, it was called a nonresident per diem. People who lived here didn't get per diem. All right, I don't know that that's specifically in the record. I point out that the deposition of the plaintiff was done in February 2009. However, the defendant waited until April 2010, relying on the deposition to bring this motion to dismiss after a considerable amount of litigation had occurred. And I also point out that when the plaintiff then attempted to file in the Superior Court, the defendant was moved to dismiss the Superior Court action, claiming that we somehow plotted to falsely claim diversity here, such that we now cannot go to the lower court. So do you have a statute of limitations problem with the claim in the state court? No, because there's a tolling, an equitable tolling, if we filed in the wrong court, except if there's bad faith. And the defendant has now claimed that we acted in bad faith. Now, if you were in Philadelphia, you'd be wanting to be in state court, not federal court. Here, you want to be in federal court. Well, Superior Court's about 13 years to trial, Your Honor, so yeah, it's preferable to be in district court. But we actually filed in district court because we believe that's where it belonged. The evidence is as follows, which is that we believe substantiates the fact that there's diversity. She was here on a temporary job assignment. She was receiving per diem. She didn't – she rented an apartment. There was much being made about the fact that she purchased furniture here, but that goes to her side. She didn't move her furniture from Texas to here because she intended to stay here. She left her furniture in her home in Texas. There was much made about the fact that her home was left unoccupied. But of course it was, because she wanted it available when she would be able to travel back to Texas. So she didn't rent her house as somebody who was not coming back. She left her mail going to Texas. She retained her Texas driver's license. She retained all her banking in Texas. She did not get a local position when she needed to see her yearly checkups. She returned to Texas for her yearly checkups. She paid her – Judge Bartle didn't talk about this evidence. He seemed to focus on the concept of her indefinite job situation here. And her statements. Right. The question on – didn't ask her how long she intended to be here. The question asked her was there an end date to her job or was it indefinite. And she said, I don't know. It's indefinite, which could have meant it could have been over in a week. It could have been over in a year. At the refinery, there are a number of turnaround projects that last for a period of time. They're unclear how long. The evidence is that, indeed, after this job was being ended, she did, indeed, return back to Baytown, Texas. She then got another job at the refinery and returned back working for Triangle. Now, throughout their brief, the defendant states that she still remains in Texas. And we would like Lee to supplement our response. Because when her jobs here at the refinery ended, when the refinery cut back, she, indeed, returned to Baytown and now works in Baytown. But if you're arguing that it's really only the time of filing that matters, isn't your desire to put in evidence as to later facts, isn't that contrary to your position? The defendant is arguing that while it's at the time of the filing, that the subsequent acts may be looked at as to intent. And so to the extent that the defendant prevails on that issue, her clear intent is that she returned to Baytown when the job was finished. Now, how about Judge Bartle's view with respect to her affidavit as being something that he would disregard because of its self-serving nature? Do you agree with his take on the law regarding that? No, I do not. And he did, indeed, completely disregard her affidavit. And the case law is that even if contradictory, the statements of a party as to intent should be considered in making this determination. He said that intent was irrelevant here. Is that correct? He did. And he did say that intent was irrelevant when, indeed, it is not. It is your intention of where you reside that is relevant. The affidavit, there were many questions that were asked that were very inartful or were asked in such a manner that the response appeared to indicate an intent not to. For instance, do you have a date when you're going to return? Are you living here? Well, yes, she was physically here living, but this was not her intent to live here forever. So the affidavit simply exemplified exactly what were the circumstances. Now, for instance, Judge Bartle found that she had this social network here. First of all, there was no evidence of that. It is true that she was born here and she left in 1993 and established residency in Texas. And she lived in Texas from then until 2005. But didn't she visit with her family on weekends? Well, first of all, she was asked a question, when do you have pain? And she said, I have pain in my shoulder when I swim. And then he was asked, when do you go swimming? And she said, well, in the summer months, maybe every other Sunday. And they said, well, who do you go swimming with? And she said her family members. There was no space and time as to when this had occurred, whether this had occurred before she filed her complaint or after the complaint. And since our summer is three months and it would have been every other week, we're talking in about 12 visits. He also found that her family members lived in close proximity. The only testimony was that she had a sister who she talked to about her pain, who lived in Calcahon, which is an estate, which is the same estate that Miss Washington lived in. There was no identification of where any of her other family members lived. Well, and I'm not sure what law talks about the social and business center as being determinative of justice. Clearly, her daughter lived in Texas, and she certainly had a social network there. The only thing I could think of that could possibly support that, when you look at the social ties, is the so-called center of gravity test that Judge Posner did in the Suffolk Circuit case. That's not the test we have here. I mean, the test we have here is, you know, if the individual is seen fixed in permanent home in place of habitation, it's the place which, whenever he is absent, he has the intention of returning. There was much said about the fact that her mail was delivered in Texas and then forwarded to her. This is a very good indication that she always intended Texas to be her home. It is not a difficult thing to transfer your mail, but she, because that was her home and she always intended to be there when she didn't have temporary assignments, she never transferred her mail. The argument that's going to be made or has been made against you is that, when you look at our decision in Vanderpool and also in Krasnov, that there's a difference somehow between just being here on a temporary basis and you sort of know when you'll go back versus being here indefinitely. And because she was here indefinitely, they argue that those cases support the conclusion that you should find that for that purpose, that at the time of the filing of those suits, that the person was a domicile in the DI. She never testified she was going to be here indefinitely. She was asked, how long is your job? Does it have an end date or is it indefinite? She could have clearly left at any time. But that wasn't the question. She was never asked, do you intend to live here indefinitely? She was never asked that. The precise question was, in December 2005, when you came down, did you know how long the assignment was going to be? The assignment. But she was never asked, did you intend to live here indefinitely? And in fact, that's why her affidavit is not contradictory, but is in addition to that testimony, that while her job was indefinite, she never intended to live here indefinitely. Is there really a difference between temporary and indefinite? Yes. Indefinite assumes that. That's a softball question. It assumes that you have no plans to ever go back. Temporary means I'm here for a short period of time, for a period of time to do a job and then I intend to go right back. And that's exactly what she did. And her deposition is contradictory. At one point, she's asked and the defendant cites to, did you ever return to Baytown from 2005 to 2008? And she says no. But two pages later, she's asked, when is the last time you went to your house? And she says, I was there in 2006. So clearly, the testimony itself in the deposition was contradictory. So that the affidavit was used to take these contradictory statements and put them into context. And to also establish all the context that she had with Texas that weren't in the deposition. For the court to disregard all of those contacts because it felt that it was contradictory is contrary to law. Because she wasn't asked where her bank accounts were or where her mail was going, any of that in her deposition. And those were all material issues that the court should have considered in arriving at its opinion but chose to completely disregard all of those facts. And by disregarding her affidavit. Very good. Thank you. We'll have you back on rebuttal. Thank you, Ms. Rohn. Mr. Cady. Good morning, Justices. If it pleases the court, my name is David Cady. I'm the attorney for the appellee. If they may be justices, I'm just a judge. I'm sorry. Attorney for the Appellee Triangle Construction and Maintenance Incorporated. Your Honors. The appellant here admitted to the two essential questions that need to be answered. Presence with the intent to remain indefinitely. Those answers were supplied by the appellant. Where is the intent to remain indefinitely in the record? I don't see that. If you take the question when you came down here, which is at the time you were here. Right. You know how long the job assignment was going to be. No, she says it was going to be indefinite. And then you couple that with the affidavit that was filed, even though I state that it's very self-serving. She says, I planned on staying here until the completion of that assignment. So you have an indefinite assignment that she plans to remain here until completion. Well, it says, at the time I traveled, I intended to return to Texas. I did not intend to permanently reside in the USVI. My intention was to return to Texas once the project was completed. Why doesn't that satisfy the intent to return? Two reasons, Your Honor. The first is that permanency is not the test. It's intent to remain indefinitely. And she's admitting that the job assignment is indefinite. Let's just back up. What is the test? When I look at the Supreme Court decision of Justice Holmes in 1914, Williamson, he says the essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere. She clearly had the intention to go back to Texas. Did she not? It was, Your Honor, some future desire to return. But that has never been the test of some future desire to return. But even in the Vanderpool case, which you've argued helps you, the court wrote there that if Smith, in that case, provided proof that she paid taxes, obtained a driver's license, registered her vehicle, or maintained a bank account in Florida, it might have been a different case. All of those things happened here.  She kept the home there. She, I think, voted in Texas. She had her doctors in Texas. And the employer paid her a per diem, which meant the employer thought that, hey, she's just here on a temporary, you can call it indefinite, whatever it is, basis. But all of those facts point to Texas, don't they? There are certainly factors that point to Texas, absolutely. What doesn't point to Texas? The fact that she was here and admitted that she was here indefinitely, admitted that she intended to remain here. But she didn't know when the employer was going to release her to go elsewhere. She thought, well, it's only going to be a year or it's going to be two years, or if there was any indication there was going to be an end to this assignment. But she didn't know. Look, if you get, you can be assigned by a lot of employers and not know when your end date in that particular locale is. And I agree. But if she had some experience, well, they had sent me to another place and that was a year, or they told me it was going to be two years max, then maybe that would be considered. But for not knowing, being prescient as to when a job is going to be ending, does her domicile depend on the employer notifying her that this job is going to last 18 months? Well, I think the burden here is on the appellant. I don't know. There's a presumption here. There's a presumption against federal jurisdiction. There's a presumption of established residence as being the domicile. And that was never mentioned by Judge Bartle. I'm wondering whether that in and of itself should give us pause. Do you agree there's a presumption in the law that the established residence is the domicile? Absolutely, there is. The factors here, though, and Judge Bartle looked at all these factors. He said, look, I understand that she has a bank in Texas. But quite frankly, having a bank in Texas, that doesn't mean anything anymore. I have a bank in Pennsylvania. I've been down here six years. Yeah, but if you have a doctor in Texas, that means you're probably going to go back and see that doctor, right? Well, the facts show that she, in fact, had doctors here. The doctors she was seeing were here, but she saw more of them. Yeah, but if she owns a home in Texas, that's like she's thinking of going back to Texas. If she's voting in Texas, if she's paying taxes out of Texas, I mean, what directional arrow, other than the fact she's assigned here, points to here as opposed to Texas? Well, Your Honor, I'm not sure, and I'd have to look at the record. I don't think she stated that she voted in Texas. I could be wrong. She came down here, and as I indicated, I'm not going to be indefinite. Her family was here. She was born here. She purchased furniture here. Her mail was sent to her, excuse me, in the Virgin Islands for exactly the reason. But she never changed her address. She never changed her address as such, did she? She had her mail forwarded from her address in Texas. She did, but the fact, she was having it forwarded here because she was staying here for a long term. What was the job again? I forget. She was a pipe inspector at the refinery. And she had come up from California to here? No. She went from here to Texas, back to here. And those are the facts. Your Honor, there was an occasion. What about the per diem? What does the per diem tell us about? I think most employers down here pay per diem for everyone that relocates. I don't know that this is something in the record, but she never said what the per diem was for. But if someone's a Virgin Islander, a Virgin Island resident, and they're working, do they get a per diem? A Virgin Island resident? If they relocate here, most employers do give them a per diem. Maybe we don't know what relocated is. It seemed to me per diem is when you're not in your normal place of residence. Well, if they had put on evidence of what the per diem was for, they never did that. They just said there was a per diem. And I know it's not in the record, but pretty much everyone that relocates to work in the refinery gets a per diem. Excuse me. I'm escaping here right now. The Florida case that's cited in the brief, the owner, he had a job in Vanderpool. That's President Vanderpool. No, no. Vanderpool was the Virgin Islands case. Oh, well, that's Florida and Virgin Islands. This was the Florida versus New Jersey case. I might be mistaken. In that case, the gentleman owned his home in New Jersey. His children lived in New Jersey. He actually still had a job in New Jersey. The court said, look, you're living in Florida. That's where you and your wife are. In this case, this is where Ms. Washington and her boyfriend were. If the term of employment had been definite, that is, two-year term, would your argument be different? I don't think I would have raised the issue if she said, look, I know. Even if she said it was going to be about two years, I don't think I would have moved the court to dismiss the case. So you're saying indefinite means for a very, very long period of time? No, it means not definite. And it doesn't have to be, I'm not saying it has to be to a day, but if she had articulated, well, even in my mind, I thought it was going to be a year or I thought it was going to be two years. Then I would say, well, it's not an indefinite situation. But she clearly articulated it was indefinite. Not only that, she worked for three years. She never said, well, I'm sick of this. After two years, I'm going back. I never thought this was going to be my career. Isn't temporary indefinite? Is that indefinite? Well, I mean, there's, I don't think it's, no. Temporary indefinite I think are two different things. Temporary means that you have an idea. If I'm here temporarily and somebody says to me, when you're going back, I don't know, whatever the employer lets me go back, is that temporary or indefinite? I think that's indefinite. I think that's indefinite.  Not exactly, but she has to have some modicum of knowledge. She doesn't have to intend to move here permanently. But the question, but I think you're mixing intent and knowledge. The question was, when you came down, did you know whether, didn't you know the time limit, or was it indefinite? And she said it was indefinite. If they send me down, put me on the district court, send me down to hear cases here and ask me if I knew the time period or was it indefinite, I would say it's indefinite. It's, quote, as long as I'm needed for this job. Does that mean that that translates into an intent to remain here permanently? No, but permanency, Your Honor, is not the test. It's indefiniteness is the test. You don't need an intent to remain permanently. And you can have a desire. Again, we're not getting to intent. It's as to her knowledge of how long the job would last. Yes, but that is the essential question. And the courts have repeatedly said that you can actually have a desire, a future desire to return from where you came. And that's all that Ms. Washington articulated in this case, that one day she was going to move back to Texas. Now, as in Vanderpool, the court looked and Judge Barra looked here and said, look, I know you're saying that you intended to move back to Texas, but let's look at the facts. You've been here since December of 2005, and you're here on the date of injury. You were here on the date that you filed this lawsuit. The judge did, and I think what this court did in Vanderpool is said, well, let's look at your self-serving claim that you really intended to go back to Texas, and let's look at what you did in the time since. Now we have three years later, she's still in the Virgin Islands. She actually went on and continues to work. And I know Attorney Rohn said she went back after this job ended. That's not true. The record clearly indicates that what happened is in May of 2008 when her employer lost his contract, she didn't go back to Texas and wait for another job. She transferred. Does it make any difference? Well, I think it does make a difference to show that her statement that she intended this to be a temporary or short-term position is not true. She stayed here. She rolled over with a new company. I think what the standard Attorney Rohn is articulating is you can come down here indefinitely and stay for 30 years but say, you know what, I always intended to go back to Texas when this job was over, so therefore I'm really a domicile of Texas. And her statements of intent to return to Texas don't match up with the fact which is that she continued to live here. Although her statements were as of the time of filing, so I don't know that the fact that later on she married someone and decided to stay longer really has much bearing. How about Judge Bartle's determination as to her social and business, the center of her social and business life? I could not find that supported in the record. Well, absolutely. She indicated that she was born in the Virgin Islands. Her sister lives in the same estate that she does, not in the same house, but what you would consider a neighborhood. They live in the same neighborhood. But that's the only fact I could find that doesn't even support the fact that her social life centered on the Virgin Islands. Well, also, Your Honor, her boyfriend who she eventually married, she met him before she filed the litigation. She starts dating him I think right before the incident, right before April, and that's the center of her social life that's going on. In her affidavit, she doesn't deny that her family lived there. We don't have a center of gravity test, do we? I don't believe so, but I think what the court can, you can look at the way Attorney Rohn says, look where the daughter was. The daughter was in the estate. You can look and say, look where the fiance or future husband is, look where the sister is, look where the parents are. In her affidavit, she's been married for all those years and there's absolutely no indication other than her self-serving statement of a true intent to return in some definite time frame. But she got married. She did get married, right? She got married. I concede it was after she filed the lawsuit, but she started dating him before. Even if you're going to go down that fast, what would stop him from going to Texas as opposed to her staying here? I'm sorry, can you repeat? What would stop him from going to Texas? Because the complaint was filed and we have no clues to what his intent was to do it. Well, no, I don't think that is not in the record. Your point is it's almost like somehow, I get the impression that you're saying that because she married someone here, she was going to stay here. Doesn't necessarily have to be that way. No, but I think what Attorney Rohn was trying to, what the appellant was trying to argue is, look, this is my intent to return. The husband who she is dating before she files the lawsuit, they could have put in the affidavit, he had said he wanted to move back to Texas and they were going to move back to Texas together. That was their plan. That's something they could have, they had free opportunity to file this affidavit. They don't put any of that in there. And the reason is, and I think it's by implication, is that they couldn't make that statement because it wasn't true. The intent was actually to remain here. And that's what her physical, what her actions as compared to her words show. If all you say is true then you can't do this. Nonetheless, does Judge Bartels' failure to mention the presumption and our uncertainty as to whether he gave that consideration, does that require remand here? I don't believe so. I think you can look at the facts and if the court can uphold a finding on any basis, it doesn't need to be one in the record. And I think the facts here clearly show an intent on her part, not her self-serving statement, the actual intent is to remain here. To remain in the Virgin Islands indefinitely. She used the word indefinitely herself. And Attorney Rohn, in the affidavit they drafted, she said she's going to stay here until, she planned on staying here until the completion of the job. She doesn't even say that she planned to leave at the end of the completion. That was the minimum period she intended to stay, was through the completion of this indefinite job assignment. Isn't the better interpretation of her use of the term indefinite as relating to the assignment, her intent to stay here on a permanent basis? The court interprets it that way, but I think if you look at her statement as to, in her affidavit, if you couple those two things, then that's the intent to remain in the territory indefinitely. You can't commute to work here, obviously. She comes down. It seems to me there's good factors on both sides of this, that you have a verdict and you have clearly erroneous evidence that's not standard on you with respect to the factual findings. Your Honor, Judge Bartle looked at the Texas bank account. He looked at the phone. He mentions all these things. Okay, so he considered this. He considers, he considers and then disregards the self-serving affidavit. He did consider it. At the beginning, I noted to you that the Supreme Court decision way back when, in 1914, talks about the proving of the absence of any intention to live elsewhere. Doesn't that mean that there is a burden on you to prove that she did not have an intent to live elsewhere? I'll answer it this way, Your Honor. At the time she came here, did she intend to live elsewhere for an indefinite period? No. Did she harbor some future desire to return to Texas? Perhaps, but that is not the test. And courts repeatedly have said it doesn't matter if you want to return one day to where you came. No, but the point is, it's almost like when you read this opinion, it reads as if the burden is on her. And maybe that's a correct interpretation of what our court has said, but it looks like the Supreme Court says there has to be an absence of any intention to live elsewhere. That looks like the burden needs to be on you at the time she came here. At the time of the complaint. At the time of the complaint. But I think, and I know my time is over, it's the intent when you arrive, and that intent when she arrived in the Virgin Islands, that's when she manifested her intent. Is that the intent when you arrive or the intent for the time of the complaint? No, it's the intent when you arrive in the new locale. Now, it's your domicile at the time of the complaint, but you change domicile at the time of the complaint. What would happen if she had an intent to stay here when she came in December of 05, but come a month before the accident, she then intended to move back to Texas? If she had articulated facts to support that, that would have been a different issue, but all the facts show that not only did she intend to stay here, that she stayed here and stayed here well beyond years after even that assignment was done, contrary to her statement in the record. There is support in the record for the per diem. If you go to paragraph 10 of the affidavit, she states in her affidavit, when I came, this is page 297 of the appendix 2, when I came to the USBI to work for SSO, and by the way, SSO was a Texas company that hired her in Texas and then shipped her here. They provided me with a $100 per diem to cover my expenses to rent a place to stay while I worked for them in the USBI. I do not own a home in the USBI. And if you go to paragraph 15 of her affidavit, I am in the USBI to do project work only. As soon as the projects are complete, I return to my home in Texas. I return to Texas three to five times a year. When I came to the USBI in 2005, I did not intend to remain indefinitely. I did not intend to make the USBI my home. My home is in Texas. I intended to complete my assignment with SSO and then to return to Texas. At the time of filing of my lawsuit in 2006, it was still my intention to return to Texas as it is today. Now, there was a statement, Your Honor, that the facts seemed equal. The problem is there is no mention of the presumption of domicile in Texas. And if the facts appear equal, that presumption is not rebutted. And that's the problem in this case. There is no mention of the presumption. And the simple statement that she didn't know how long a job was, was somehow used to say that she had no intent to return to Texas and that she intended to remain here and domicile here indefinitely. And that is not what she testified to. That's not what she asked and that's not what she testified to. She has always intended to return to Baytown and is in fact in Baytown now with her husband. So, there's this, the judge, well, there's a statement that says that he regarded her affidavit. He clearly states, I'm disregarding her entire affidavit. There was evidence that was material for making this determination and seeing whether or not the presumption had been rebutted and it wasn't considered. And then some social network was considered. But that wasn't part of the test so it was never addressed by either party because social network is not part of the test. You know, if it had been, we would have pointed out that she goes back to Texas and she sees her daughter and she's got a birth, that goes with the birthday and she has a social network in Texas as well. So, we maintain, Your Honor, that after years of litigation to have found that she didn't overcome the presumption of residency in Texas was erroneous and should be reversed. Any other questions? Thank you. The case was very well argued by both sides. Thank you, sir. Take the matter under advisement. Thank you.